UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FERRING PHARMACEUTICALS INC.**,<br><br>       Plaintiff,<br><br>   v.<br><br>**WATSON PHARMACEUTICALS, INC.** *et al.*,<br><br>       Defendants. | Civ. No. 2:12-cv-05824 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

     Plaintiff Ferring Pharmaceuticals Inc. ("Ferring") brings this unfair competition action against Defendants Actavis, Inc., Actavis Pharma, Inc. ("Actavis"), and Watson Laboratories, Inc.  In response, Actavis filed counterclaims alleging unfair competition, computer trespass, computer fraud, trespass to chattels, and violations of the Sherman Anti-Trust Act, 15 U.S.C. § 1 *et seq.*  This matter comes before the Court on (1) Ferring's motion to dismiss Actavis's Counterclaims under Federal Rule of Civil Procedure 12(b)(6), and (2) Actavis's cross-motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  There was no oral argument.  Fed. R. Civ. P. 78(b).  For the reasons set forth below, Ferring's motion to dismiss is partially **GRANTED** and partially **DENIED**, and Actavis's cross-motion for judgment on the pleadings is **DENIED**.

    I.    BACKGROUND

     Ferring and Actavis are pharmaceutical companies that market competing products used for in vitro fertilization ("IVF") and other forms of assisted reproductive technology ("ART").  This case centers upon Ferring's product, Endometrin, and Actavis's product, Crinone.  Endometrin and Crinone are competing products that provide progesterone supplementation for women undergoing IVF.  First Amended Complaint ("FAC" or "Amended Complaint") ¶ 18, 21, ECF No. 80.  Progesterone is a natural hormone that prepares and maintains the uterine lining for the embryo before and during the early stages of pregnancy.  FAC ¶ 19, 20.  Women undergoing IVF typically

require progesterone supplementation to establish and maintain their pregnancies.  FAC ¶ 21.

Traditionally, progesterone supplements are administered through intramuscular injections.  Endometrin and Crinone are vaginal inserts of progesterone that supplement or replace daily intramuscular shots.  FAC ¶ 28.  Ferring's Endometrin is delivered in capsule form and applied two or three times per day.  FAC ¶ 26.  Watson's Crinone is a gel delivered via applicator and is applied once daily.  FAC ¶ 25.  There are currently no other Food and Drug Administration ("FDA") approved vaginal inserts for IVF.

Endometrin and Crinone are prescription products.  Accordingly, the marketing and advertising statements for those products are directed at both patients and healthcare professionals.  The Amended Complaint alleges that Defendants conduct webcasts over the Internet to promote Crinone to healthcare professionals.  FAC ¶ 39.  Additionally, Defendants maintain a promotional website, which contains both a section targeted to potential patients and a section targeted to healthcare professionals.  FAC ¶ 42-43.  The Amended Complaint alleges that Actavis made several false and misleading statements about Endometrin and Crinone during a September 11, 2012 webcast seminar (the "Webcast").  FAC ¶ 65.  The Amended Complaint further alleges that Actavis's website and other marketing materials contain similar false statements about the two products.  FAC ¶¶ 119, 132, 146, 168, 206.

In response to the Amended Complaint, Actavis filed an Answer containing the Counterclaims.  Actavis alleges that Ferring's sales representatives have made various false statements about Endometrin and Crinone.  Def.'s Countercls. ¶ 17-18, 35-36, ECF No. 95.  Actavis further alleges that "[i]n its marketing, Ferring makes numerous claims that Endometrin® is preferred over Crinone®," and that "[t]hese statements are untrue."  Def.'s Countercls. ¶¶ 40-41.  Actavis also alleges that Ferring violated federal and New Jersey state statutes related to computer fraud and trespass and committed common law trespass by obtaining a copy of Ferring's private, password-protected Webcast.  Def.'s Countercls. ¶¶ 62, 66.  Finally, Actavis alleges that Ferring has violated Section 1 of the Sherman Anti-Trust Act by creating an illegal tying arrangement between one of its other IVF products, Menopur, and Endometrin.  Def.'s Countercls. ¶ 84.

Ferring moves to dismiss the Counterclaims, including Actavis's claim for false advertising under the Lanham Act.  Actavis cross-moves for judgment on the pleadings as to Ferring's claims for false advertising under the Lanham Act, on the grounds that if the Counterclaims do not state a claim for false advertising, then Ferring's claims for false advertising are similarly deficient.

## II. FERRING'S MOTION TO DISMISS

Actavis's Counterclaims assert the following causes of action:

(1) Counts One, Two, and Three:  False Advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a);
(2) Count Four[1]:  Unfair Competition under the New Jersey Fair Trade Act, N.J. Stat. Ann. § 56:4-1 et seq (the "NJFTA");
(3) Count Five[2]:  Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA");
(4) Count Six[3]:  Violation of the New Jersey Computer Related Offenses Act, N. J. Stat. Ann. § 2A:38A-3 (the "CROA");
(5) Count Seven[4]:  Trespass to Chattels; and
(6) Count Eight[5]:  Violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1.

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

### B.  The False Advertising Claims (Counts One, Two, and Three)

Counterclaim Counts One, Two, and Three allege claims for false advertising under the Lanham Act.  In Count One, Actavis alleges that Ferring instructed its sales representatives make false statements to medical professionals about the types of IVF for

---

[1] Incorrectly labeled "Count Three."
[2] Incorrectly labeled "Count Four."
[3] Incorrectly labeled "Count Five."
[4] Incorrectly labeled "Count Six."
[5] Incorrectly labeled "Count Seven."

which Endometrin is approved. IVF involves the use of either the patient's own egg, called a natural or fresh cycle IVF, or a donor egg, called a donor cycle or a frozen embryo transfer ("FET") cycle. Def.'s Countercls. ¶ 8. Actavis claims that Ferring incorrectly instructed its sales representatives to tell medical professionals that Endometrin is approved for progesterone replacement therapy during a donor or FET cycle (the "FET Cycle Statements"). Def.'s Countercls. ¶ 17. Actavis further alleges that only Crinone "is indicated or, or approved for" that use. Def.'s Countercls. ¶ 11.

In Count Two, Actavis claims that Ferring created a document for dealing with questions about Crinone (the "Crinone Objection Handler"), which included misinformation about Crinone and Endometrin. Def.'s Countercls. ¶ 33-34. For instance, the Crinone Objection Handler instructed sales representatives to tell medical professionals that women of all ages can use Endometrin. Def.'s Countercls. ¶ 35. Meanwhile, the package insert for Endometrin states that "[e]fficacy in women 35 years of age and older has not been clearly established." Def.'s Countercls. ¶ 27. The Complaint further alleges that, upon information and belief, Ferring's sales representatives communicated this misinformation to medical professionals. Def.'s Countercls. ¶ 36. Finally, in Count Three, Actavis alleges that "[i]n its marketing, Ferring makes numerous claims that Endometrin is preferred over Crinone." Def.'s Countercls. ¶¶ 40. Actavis further alleges that "[t]hese statements are untrue." Def.'s Countercls. ¶ 41.

To state a claim for false advertising under Section 43(a)(1)(B) of the Lanham Act, a plaintiff must allege that: (1) the defendant, in commercial advertising or promotion, made false or misleading statements about her own or another's product; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, and the like. *Warner-Lambert Co. v. BreathAsure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000) (quoting *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir.1994)).

Regarding the first element, Section 43(a)(1)(B) does not apply to any misrepresentation, but instead is limited to "commercial advertising or promotion." *Trans USA Products, Inc. v. Howard Berger Co., Inc.*, No. 07-5924, 2008 WL 852324, *4 (D.N.J. Mar. 28, 2008). Courts define "commercial advertising and promotion" as (1) commercial speech (2) made by a defendant who is in commercial competition with plaintiff (3) for the purpose of influencing consumers to buy defendant's goods or services, (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry. *Id.*; *Gordon and Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535 (S.D.N.Y. 1994). And the second element – actual deception or a tendency to deceive – is presumed if a plaintiff

proves that an advertisement is unambiguous and literally false.  *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002).

Ferring argues that Actavis's allegations fail to meet the heightened pleading standard for Lanham Act false advertising claims.  As an initial matter, the Court rejects Ferring's argument that the Court should apply an intermediate pleading standard to the Lanham Act claims.  *See U.S. ex rel. Knisely v. Cintas Corp., Inc.*, 298 F.R.D. 229, 239 (E.D. Pa. 2014) (refusing to apply an intermediate standard given that the Third Circuit has not spoken on the issue and that, for the most part, district courts applying the heightened standard did so prior to the Supreme Court's decisions in *Iqbal* and *Twombly*); *Edison Motor Sales, LLC v. Dibre Auto Grp.*, LLC, No. 12- 239, 2012 WL 5199764, at *5 (D.N.J. Oct. 19, 2012) (noting that "[t]he intermediate pleading standard, however, is not binding on this Court and is simply persuasive" and instead applying the *Iqbal* standard to a false advertising claim).

Applying the *Iqbal* standard, the Court finds that Actavis's allegations in Counts One and Two are sufficient to survive Ferring's motion, but that Count Three fails to state a plausible claim.  As to Counts One and Two, Actavis alleges that Ferring instructed its sales representatives to make false statements about Endometrin's approved uses and efficacy to medical professionals.  Actavis further alleges that the sales representatives followed those instructions and made those statements.  And the Counterclaims specify the content of those false statements.  Given that Actavis alleges that those statements were false, Actavis need not allege deception.  Actavis further alleges that the false statements "are the kind of advertising that would likely be relied on by medical professionals" when choosing to prescribe Endometrin over Crinone.  Def.'s Countercls. ¶ 20, 37.  This, combined with the allegations regarding the content of the alleged statements, sufficiently alleges materiality.  Additionally, reading the Counterclaims as a whole, they adequately allege that Endometrin and Crinone travel in interstate commerce.  Def.'s Countercls. ¶ 82 ("Endometrin® and Crinone® are approved for distribution throughout the United States, compete throughout the United States, are prescribed by doctors and sold to patients for IVF throughout the United States . . . .").  And Counts One and Two both adequately allege damages in that the allegations allow the reasonable inference that Actavis would be damaged by the misrepresentations – through "lost sales" or otherwise.  *See* Def.'s Countercls. ¶ 11, 20-21, 37-38.

Ferring's argument that Actavis lacks standing to base a claim on the Crinone Objection Handler, because Actavis did not own Crinone when the Crinone Objection Handler was published in 2010, is unavailing.  That argument relies on a fact outside the pleadings – the publication date of the Crinone Objection Handler.  And the fact that the Crinone Objection Handler was published in 2010 does not necessarily mean that the sales representatives only used it during that year.

5

Count Three, however, fails to state a claim. The bare bones allegation that "[i]n its marketing, Ferring makes numerous claims that Endometrin is preferred over Crinone" is insufficient. This vague statement does not sufficiently identify what false or misleading statements were made, the context in which they were made, and to whom they were made. Accordingly, Actavis has failed to adequately allege that the false statements qualify as "commercial advertising or promotion."

Ferring's motion to dismiss is thus **DENIED** as to Counts One and Two and **GRANTED** as to Count Three. Count Three will be **DISMISSED WITHOUT PREJUDICE**.

### C. Unfair Competition under the New Jersey Fair Trade Act (Count Four)

Count Four alleges that the false statements discussed above violate the NJFTA. The NJFTA codifies New Jersey common law regarding unfair competition. *Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc.*, No. 11-4380, 2012 WL 3599368, at *6 (D.N.J. Aug. 17, 2012). The Third Circuit has stated that "[e]xcept for the interstate commerce requirement [of the Lanham Act], the elements of the unfair competition torts proscribed by New Jersey law and by section 43(a) of the Lanham Act are the same . . . ." *SK & F, Co. v. Premo Pharm. Laboratories, Inc.*, 625 F.2d 1055, 1066 (3d Cir. 1980). Because the Court finds that Counts One and Two state claims for false advertising under the Lanham Act, it finds that Actavis has also stated a claim for false advertising under New Jersey law. The Court will thus **DENY** the motion to dismiss Count Four.

### D. Violation of the Computer Fraud and Abuse Act (Count Five)

The Fifth Count asserts violations of the CFAA arising from Ferring's alleged unauthorized access of Actavis's password-protected Webcast. On September 11, 2012, Actavis conducted a live, invitation-only seminar on Crinone. Def.'s Countercls. ¶ 54. Actavis also made the seminar available over the Internet through the Webcast. Actavis alleges that access to the Webcast was highly restricted and was available only to specific medical professionals upon invitation from Actavis. Def.'s Countercls. ¶ 55. Those medical professionals were provided either with access to a room where they could view the Webcast or with an Internet address and password that allowed them to access Actavis's hosting computers and view the Webcast over the Internet. Def.'s Countercls. ¶ 55.

As an initial matter, Ferring argues that we should dismiss this claim because Actavis does not identify a specific subsection providing grounds for the alleged violation. Ferring points to no case law supporting the notion that Actavis's pleading must cite a specific subsection of Section 1030. And numerous prior courts have held that the failure to cite a specific subsection is not adequate grounds for dismissal. *See, e.g., P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.*,

No. 04-4554, 2007 WL 708978, at *8 (D.N.J. Mar. 5, 2007) ("The notice-pleading standard of Rule 8(a)(2) does not require that a plaintiff plead specific subsections of a statute he or she claims has been violated."); *Kuczynski v. Ragen Corp.*, 732 F. Supp. 378, 384 (S.D.N.Y. 1989) (holding that alleging a particular subsection is not required provided that plaintiffs plead fraud with sufficient particularity to allow the Court to infer which section of RICO is implicated).

Actavis's brief specifies that Count Five asserts claims under (a)(2)(C), (a)(5)(C), and (a)(6). Ferring argues that we should dismiss these claims because (1) Actavis fails to plead entitlement to a civil remedy, and (2) Actavis has not adequately alleged the elements of any violation under Section 1030. The Court disagrees.

Regarding Actavis's first argument, the CFAA contains a two-part injury requirement as a predicate to a civil claim. A civil claimant must (1) suffer a root injury of damage or loss, and (2) suffer one of five effects set forth in subsection (c)(4)(A)(i)(I)-(V). 18 U.S.C. § 1030(g). The CFAA defines damage as "any impairment to the integrity or availability of data, a system, or information." 18 U.S.C. § 1030(e)(8). And the CFAA defines loss as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). As to the second "effects" requirement, a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value" is sufficient. 18 U.S.C. § 1030 (c)(4)(A)(i)(I). Here, the Counterclaims allege "losses in excess of $5,000, including but not limited to losses sustained in responding to Ferring's actions, investigating Ferring's actions and taking remedial steps to prevent Ferring's further actions." Def.'s Countercls. ¶ 64. These alleged losses satisfy the two-part injury requirement for a civil claim. *See P.C. of Yonkers*, 2007 WL 708978, at *5-6 (finding that plaintiff's allegation of "substantial losses in excess of $5,000.00, including but not limited to losses sustained in responding to defendants' actions, investigating defendants' actions and taking remedial steps to prevent defendants' further actions" satisfied Section 1030(g)).

As to Actavis's second argument, the Court finds that Actavis has failed to allege a claim under subsection (a)(6). Subsection (a)(6) provides liability for whoever "knowingly and with intent to defraud traffics (as defined in section 1029) in any password or similar information through which a computer may be accessed without authorization . . . ." 18 U.S.C. § 1029 defines "traffic" as "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of." The Counterclaims do not allege that Ferring transferred, or otherwise disposed of, the password for the Webcast. Rather, it alleges that Ferring either "evaded the password protections" or induced someone with the password to provide it with the Webcast. This

conduct does not constitute "trafficking" under Section 1029. *See State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309, 317 (E.D. Va. 2009).

Actavis has, however, adequately stated a claim under subsections (a)(2)(C) and (a)(5)(C). Subsection (a)(2)(C) provides that "[w]hoever ... intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer . . . shall be punished as provided in subsection (c) of this section." Subsection 1030(a)(5)(C) similarly proscribes the intentional access of a protected computer without authorization where that conduct causes damage or loss. Ferring argues that the Counterclaims fail to identify a specific protected computer. To the contrary, the Counterclaims allege that "Actavis's hosting computers" streamed the password-protected Webcast live over the Internet. Defs.'s Countercls. ¶ 55. This is sufficient for Rule 12(b)(6) purposes. Ferring further argues that Actavis fails to allege that Ferring "accessed a computer without authorization." However, the Counterclaims allege that "Ferring either evaded the password protections, or induced an individual who was invited and was provided with a password to exceed their authority and provide the password protected webcast to Ferring." Def.'s Countercl.'s ¶ 62. While the Court acknowledges the case law suggesting that the second scenario may not be actionable, the first is adequate to state a claim under the CFAA. *See Robinson v. New Jersey*, No. 11-6139, 2013 WL 3894129, at *4 (D.N.J. July 26, 2013) (internal quotations omitted) ("District courts in this Circuit have held, in the employer-employee context, that an employee who may access a computer by the terms of his employment is authorized to use that computer for purposes of [the CFAA] even if his purpose in doing so is to misuse or misappropriate the employer's information."). Accordingly, the Court will **DENY** Ferring's motion to dismiss Count Five.

### E.  Violation of the New Jersey Computer Related Offenses Act (Count Six)

Count Six alleges that Ferring's conduct violated subsections (c) and (e) of the CROA. Subsection (c) creates a civil cause of action for "the purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system or computer network." N. J. Stat. Ann. § 2A:38A-3(c). Subsection (e) creates civil liability for "the purposeful or knowing accessing and reckless altering, damaging, destroying or obtaining of any data, data base, computer, computer program, computer software, computer equipment, computer system or computer network." *Id.* § 2A:38A-3(e). The Court finds that the Counterclaims adequately alleged a claim under the CROA. Ferring argues that Actavis has not alleged that Ferring acted in a purposeful, knowing, or reckless manner. However, Actavis's allegation that Ferring evaded the Actavis's password protections in order to obtain the Internet-streamed Webcast sufficiently alleges purposeful or knowing access of a computer for the purpose of obtaining data. Ferring's argument that it is not a proper actor under the statute is also unconvincing, because the Counterclaims specifically allege that Ferring evaded the password protections. Finally, Ferring argues

that to bring a claim under the CROA, Actavis must allege that the accessed computer was located in New Jersey. But Ferring provides no case law supporting its argument, and nothing in the statute supports that proposition. The Court will thus **DENY** the motion to dismiss Count Six.

### F. Trespass to Chattels (Count Seven)

In Count Seven, Actavis alleges that Ferring committed common law trespass to chattels by evading the password protection and obtaining a copy of the Webcast. Under New Jersey law, "a cognizable claim for trespass occurs 'when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner *is deprived of the use of it*.'" *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 312 (D.N.J. 2009) (emphasis added) (quoting *Luse v. Jones*, 39 N.J.L. 707, 709 (N.J. 1877)). Here, Actavis fails to allege the deprivation element. Thus, the Court will **GRANT** Ferring's motion to dismiss Count Seven. Count Seven will be **DISMISSED WITHOUT PREJUDICE**.

### G. Violation of the Sherman Anti-Trust Act (Count Eight)

In Count Eight, Actavis alleges that Ferring has illegally tied the sale of its Menopur product to sales of Endometrin, in violation of the Sherman Anti-Trust Act. Some further background on IVF is helpful at this juncture. During a reproductive cycle, eggs develop from follicles on the ovaries. Ferring manufactures Menopur, a drug that contains two hormones, Follicle-Stimulating Hormone (FSH) and Luteinizing Hormone (LH). Defs.'s Countercls. ¶ 75. FSH stimulates the ovaries to produce multiple follicles during a given reproductive cycle, thus increasing the possibility that the patient will produce an egg. Defs.'s Countercls. ¶ 74, 78. Menopur is the only drug available in the United States that delivers FHS and LH for IVF. Defs.'s Countercls. ¶ 79. Actavis alleges that Ferring offers a discount program to pharmacies that ties the sale of Menopur to the pharmacies willingness to sell Endometrin instead of Crinone. Defs.'s Countercls. ¶ 84. The program provides discounts on the cost of Menopur based the pharmacy's market share of Endometrin relative to Crinone. Defs.'s Countercls. ¶ 84. Specifically, Actavis alleges that "if a pharmacy's market share of Endometrin® exceeds 70%, then it receives a 10% reduction in the cost of Menopur®." Def.'s Countercls. ¶ 85. Actavis argues that Ferring's discount program is a tying arrangement and violates the Sherman Anti-Trust Act. Defs.'s Countercls. ¶ 92. The Court disagrees.

"Tying exists where a seller conditions the sale of one good (the tying product) on the buyer also purchasing another, separate good (the tied product)." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 510-11 (3d Cir. 1998). Thus, an essential element of an anti-trust claim based on illegal tying is that the sale of one product is conditioned on the sale of another. *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6; *Warren Gen. Hosp. v. Amgen Inc.*, No. 09-4935, 2010 WL 2326254, at *7 (D.N.J. June 7, 2010). Here, Actavis has not adequately alleged the conditioned sale element of a tying claim. Specifically, the Counterclaims do not allege that the discount program

essentially forces pharmacists wishing to purchase Menopur to also purchase Endometrin.  *See Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006) (finding that a drug manufacturer did not effect a tying arrangement when selling a patented drug in combination with another drug at a discount because patented drug was also available for sale separately); *DSM Desotech Inc. v. 3D Systs. Corp.*, No. 08-1531, 2009 WL 174989, at *4 (N.D. Ill. 2009) ("Even if the defendant attempts to induce consumers into purchasing both products … by offering the bundle at a discount, he has not engaged in illegal tying so long as the consumer remains free to purchase each item separately."); *Zschaler v. Claneil Enterprises, Inc.*, 958 F. Supp. 929, 944 (D. Vt. 1997) ("The Court will not infer coercion from the mere bundling of products by Defendants."). Accordingly, the Court will **GRANT** Ferring's motion to dismiss Count 8 and **DISMISS** Count 8 **WITHOUT PREJUDICE**.

Finally, Ferring argues that Actavis should not be permitted to re-plead any dismissed Counts, because Actavis waited almost two years from the filing of the original Complaint to bring its Counterclaims.  Ferring argues that allowing Actavis to file an amendment now, at a time when discovery is nearing a close, amounts to undue prejudice.  However, given the Third Circuit's demonstrated liberality toward amendments under Federal Rule of Civil Procedure 15(a) and the fact that a number of the Counterclaim Counts will proceed regardless, the Court will grant Actavis 30 days to amend.

### III.   ACTAVIS'S MOTION FOR JUDGMENT ON THE PLEADINGS

Actavis cross-moves for judgment on the pleadings under Rule 12(c) as to Ferring's claims for false advertising that are based on misleading, rather than literally false, statements.  The Court applies the same legal standard to a motion for judgment on the pleadings under Rule 12(c) as it does to a motion to dismiss under Rule 12(b)(6). *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002).

Actavis basically argues that if the Counterclaims do not adequately allege deception and materiality, then Ferring's First Amended Complaint also fails to allege those elements.  The Court finds that Ferring has more than sufficiently alleged both deception and materiality.  *See, e.g.,* FAC ¶¶ 68-73, 75, 77.  The Court will thus **DENY** Actavis's motion.

### IV.   CONCLUSION

For the reasons stated above, Ferring's motion to dismiss is partially **GRANTED** and partially **DENIED**.  The motion to dismiss is **DENIED** as to Counts One, Two, Four, Five, and Six.  The motion to dismiss is **GRANTED** as to Counts Three, Seven, and Eight.  Counts Three, Seven, and Eight are **DISMISSED WITHOUT PREJUDICE**. The Court shall grant Actavis 30 days to file Amended Counterclaims consistent with this

Opinion.  Actavis's cross-motion for judgment on the pleadings is **DENIED**.  An appropriate order follows.

                                         /s/ William J. Martini
                                    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 4, 2014**